**DUPLATE CORPORATION v. TRIPLEX SAFETY GLASS CO. OF NORTH AMERICA.**

**No. 4326.**

Circuit Court of Appeals, Third Circuit.

July 16, 1930.

Charles Neave, of New York City, and Marshall A. Christy, of Pittsburgh, Pa. (James C. Bradley, of Pittsburgh, Pa., and C. H. Biesterfeld, of Wilmington, Del., of counsel), for appellant.

Drury W. Cooper and William B. Greeley, both of New York City, Jo Baily Brown, of Pittsburgh, Pa., and Thomas J. Byrne, of New York City, for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and JOHNSON, District Judge.

BUFFINGTON, Circuit Judge.

This case concerns a glass which is non-shatterable, in that, while it may be broken, the broken pieces stay in place and will not splinter. It is largely used in automobiles, and since, as stated by the court below, 60 per cent. of automobile personal injuries are caused by flying splinters, not only its commercial value will be seen, but if protected by a patent, such patent partakes of the humane. See J. L. Mott Iron Works v. Standard Sanitary Mfg. Co. (C. C. A.) 159 F. 135, 138, where this court in an analogous situation said: "He contributed to an important industry a device, * * * which * * * rose to the plane of the humane." Fragility is inseparable in the mind with glass and to apply to it the word and quality, nonshatterable, is to suggest at once novelty, originality, pioneership. And such is the case. On January 11, 1910, Benedictus, a French artistic painter, applied for and was granted patent No. 1,098,342. for "reinforced glass and process of manufacturing the same." In his specification he states:

"This invention relates to the application of sheet celluloid for strengthening or backing glass and it has reference more particularly to a product formed of two sheets of glass united by the interposition and sticking or pasting between them of a sheet of celluloid."

He aptly summarizes the distinctive features of his glass in his first claim, which reads as follows:

"As a new article of manufacture laminated, adherent sheets of glass and flexible celluloid, the surface of the celluloid firmly adhering to the glass whereby a composite is provided having substantially the transparency of glass, the adhesion and strength of the celluloid being such as to reinforce the structure, resist rupture and prevent the scattering of glass fragments on the breakage of the glass."

Benedictus' glass was called to the attention of some people in London, who were led

to form a company, buy his patent, and begin making Benedictus glass. The company also bought a later Benedictus patent, to which reference will be hereafter made, and which is the patent in suit. The English company made glass under the two patents and sold them to the Triplex Safety Glass Company of North America, the plaintiff in the present case. The proof is that while Benedictus' first patent was practical and produced a nonshatterable glass, it was not wholly satisfactory because "we did not get adhesion to any measurable degree." The company experimented to get better adhesion. "We endeavored to use Canada Balsam as an adhesive, but the results were not satisfactory. We attempted to use castor oil, with unsatisfactory results." Attempts were made to soften the faces of the celluloid before applying heat and pressure—many plastic solvents of celluloid were tried but without success.

In this state of the art Benedictus, in his patent No. 1,182,739, applied for June 14, 1911, and granted May 9, 1916, disclosed a solution of the difficulty, in the new article of manufacture, which is the bone of contention in this case. Such new article of manufacture is aptly described in his twelfth claim, which is hereafter stated and which alone is in issue in this case. His other eleven claims, with which we are not here concerned, show methods he disclosed of making his new glass. Briefly stated, Benedictus' disclosure was the use of gelatin substantially free from contained moisture. Coupling his later with his earlier efforts, Benedictus says in his specification:

"This invention relates to a new process for the manufacture of the strengthened glass which forms the subject of my application for Letters Patent filed January 11th, 1910, Serial No. 537,557, and my application for Letters Patent filed June 13, 1911, Serial No. 632,850."

Describing gelatin as being effective as an adhesive but objectionable on account of its hygroscopic or moisture retaining characteristic, his specification says:

"This process relates more particularly to the case of a strengthening layer composed wholly or in part of gelatin. Gelatin, which liquefies at a comparatively low temperature, presents the advantage of being readily attachable to glass or celluloid under the action of *moderate heat* completed if necessary by the application of pressure and without requiring the use of a solvent to soften the surfaces which are to be stuck together. Nev-

ertheless gelatin is a hygroscopic substance which *in spite* of attempted drying may easily retain moisture which prejudicially affects the solidity and the transparency of the finished strengthened glass."

The specification then discloses details of means by which Benedictus showed, in accordance with the statute requirement, how the objectionable moisture of gelatin could be removed and which suggested processes are embodied in his first eleven claims. On this specification he was allowed claim 12, which, divided into its constituent elements, is:

A. His new product, "as a new article of manufacture."

B. Its constituent elements, "a sheet of celluloid faced on both sides and in the order named by sheets of gelatin and glass."

C. How treated, "all rigidly and autogenously united together."

D. The essential characteristic of the gelatin. "The gelatin being substantially free from contained moisture." In its entirety the claim reads as follows:

"12. As a new article of manufacture, a sheet of celluloid faced on both sides and in the order named by sheets of gelatin and glass, all rigidly and autogenously united together, and the gelatin being substantially free from contained moisture, as described."

It will be noted that the novel element in the new article of manufacture so therein claimed was sheets of gelatin substantially free from contained moisture and not the mode of making such sheets which was the subject of the eleven process claims. That such new article was novel appears from the proofs. The patent of Wood, No. 830,398, did not disclose the combining and conjoint use of all the elements of Benedictus' claim and, moreover, where he suggested the alternative use of either "a sheet of celluloid between two sheets of glass" or "of a film of gelatin or other transparent substance less brittle than glass," Wood used Canada balsam, which as we have seen proved unsatisfactory. Moreover, the proof by a witness who took part in the starting and development of nonshatterable glass in England is: "I never met Wood, or anybody manufacturing under Wood, in competition in England."

That the glass was useful is shown by the use made of it and the rapid and broadening market it brought into being on its own merit.

"The plaintiff company started to manu-

facture in 1926, and during that year shipped 1,153 square feet; in 1927, approximately 50,000 square feet; in 1928, approximately 2,000,000 square feet and in the first six months of 1929, about 3,750,000 square feet."

In addition to this market under the patent, there was a large infringing use by the defendants, for the proof is:

"In 1928 this defendant began to make competition with our company felt· th:- -- petition had a very decided efl prices."

Moreover, the evidence is th: to the makers recited above, th censed product made by large u: regard the proof is:

"At the initiation 'of our bus. considerable difficulty in intr( product upon the market. We automobile manufacturers, and t the position that, irrespective o1 of the product, they would not p cars that they manufactured unti demanded it; and we were force individuals until we could create demand for the product, althoug able to demonstrate the fact thal of the people that were injured bile accidents in this country we the glass. This was the result of tigation through the insurance co1

"We sold a license under the suit to the Ford Automobile C( 1927, on a basis by which they cc facture Triplex in return for a c which they agreed to buy not less of their requirements from us. ' provided that they could manufa plex up to half of their requireme1 hicles produced by the Ford Con its subsidiaries. This year we sol( to the Johnson Glass Company of City, Indiana, in return for an ag1 pay us ten cents a square foot roya glass they sold, or five per cent o1 price, whichever was the greater, a1 turn agreed not to sell any glass prices we were selling at, and li1 amount they could make to ten pe. cent o1 our production. The product of these licensees is the same as ours."

We are therefore led to the conclusion that the patent is valid. In that regard and in its meritorious character and in the fact that the defendants infringe, we find ourselves in accord with the trial judge as stated in his opinion in language and reasoning we could not improve upon.

"We have no hesitation in concluding that the patent is valid, that there was a real invention in bringing to the art the product made by adhesion of celluloid and glass with the use of gelatin that is substantially free from contained moisture. It was thoroughly demonstrated that using wet gelatin or sticky gelatin for the purpose of cementing together the sheets of glass and celluloid resulted in a product which was streaked and cloudy, took away from the clear visibility that was produced by the use of gelatin from which he moisture had been substantially substract-d. The use of this dehydrated gelatin as a ement was not mere improvement in a rowded art. Benedictus was the first to ring to the art the use of gelatinous cement hich would provide an unclouded glass. 'e, therefore, hold his claim 12 valid, and nstrue it broadly as bringing to the art a w product, i. e., laminated glass, in which , constituent elements of celluloid and ,ss have been cemented together with a atin which has been substantially dehy-.ted.

"We need next to determine whether or the defendant by its product has in-1ged the patent. We find from the evi-ce that the defendant in its product uses s and celluloid cemented together by a film of gelatin in substantially the same .ner as that disclosed by the Benedictus nt. In other words, the defendant uses cement a gelatin from which the mois-has been substantially extracted by heat. ; was the main disclosure of the Benedic-)atent, i. e., the fact that gelatin which is tically dry to sight and to touch could be under heat and pressure so as to cause s of glass and celluloid to adhere and produce a strengthened glass with no :rment of transparency. That was the nvention of Benedictus.

'he defendant has incorporated in its ct that very element. There is evidence he moisture-content of the gelatin used 3 defendant is much greater than the 1 used by the plaintiff's process, and tnat the defendant in its process does not use alcohol to further the dehydration of the gelatin. But the main element is there—gelatin with the moisture sufficiently extracted so as to cause the sheets of celluloid and glass to adhere to one another with no impairment of transparency. That is the product of both processes used by the plaintiff and the defendant." 42 F.(2d) 737.

So holding, the decree below is affirmed.