## STEINFUR PATENTS CORPORATION v. WILLIAM BEYER, Inc., et al.

### No. 21.

Circuit Court of Appeals, Second Circuit.
Dec. 19, 1932.

Alexander A. Mayper, of New York City (W. Brown Morton and Frederick Breitenfeld, both of New York City, of counsel), for appellants.

Edward M. Evarts, of New York City (O. Ellery Edwards, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The patents in suit relate to the art of bleaching and dyeing furs and the like. One patent is for a process of treating fur skins; the other for the products resulting from the practice of the process. The product patent No. 1,564,378 was issued December 8, 1925, and some two months before the process patent, No. 1,573,200, although both applications were filed in the Patent Office on the same date, May 3, 1924. All the claims of each patent were held valid and infringed by the District Judge, whose careful and thorough discussion of the issues below is reported in 56 F.(2d) 372.

The patented process discloses a method of bleaching naturally dark-colored fur skins without impairment of the leather or hair. The skins so bleached may then be dyed the same colors as formerly could be successfully applied only to white or naturally light-colored furs. This resulted in a commercial advantage, as the dark-colored skins were cheaper.

There are three stages in the process: The first relating to treatment of the unbleached skins; the second to bleaching them; and the third to dyeing the bleached skins. In the first stage, the skins are soaked in a solution containing a chemical such as ferrous sulphate, which the patents describe as "a protective agent." Preferably, the solution may also contain what is called "a stabilizing agent," such as ammonium chloride; its purpose being to prevent rapid oxidation of the ferrous compound specified as the protective agent. The specifications point out that application of the protective agent "prior to the bleaching or decolorizing step" not only accelerates the action of the subsequently employed "bleaching agent," but also, in some way not thoroughly understood, protects the leather and hair so that bleaching is accomplished without impairing their strength, texture, and luster. The second stage involves immersing the skins which have previously been treated with the protective agent, and preferably with the stabilizing agent also, in a bath containing "a bleaching agent," such as hydrogen peroxide. The final step, if it is desired to dye the bleached skin, is the dyeing operation, which may be carried out in any of the customary methods.

The product patent describes the same method of treatment as the process patent, and claims the product of the several steps as "an article of manufacture." There are twenty-four claims; one group relating to an unbleached fur skin impregnated with a solution of the protective agent, another group relating to a bleached fur skin which had previously been treated with the protective agent.

and a third group relating to a bleached and dyed skin.

The validity of both patents is attacked upon the ground that the applications do not give the "full, clear, concise, and exact" description of the invention which the statute requires. 35 USCA § 33. It is argued that the patentees have withheld from the specifications the actual ingredients of the "protective" solution used in the first stage of their process; in other words, the patents disclose ferrous sulphate as the protective agent and ammonium chloride as the stabilizing agent, while in practice there is added a third ingredient, tartar emetic, which, the defendants contend, is essential to successful operation of the process. These three ingredients constituted an old and well-known mordant, and this in fact is what the plaintiff uses in its commercial practice of the process, although the patents specify the two ingredient treatment.

The argument of incomplete disclosure is scarcely separable from that of inoperativeness in the defendants' presentation of their contentions. On both issues the District Court made findings against them. We cannot say that its findings were without support. The testimony on the subject of inoperativeness was in dispute, and for reasons given in his opinion the District Judge preferred the testimony of the plaintiff's expert witness to that of the defendants' expert. It is by no means clear that good results are impossible if the process is used just as the patentees prescribe. A defendant's proof of inoperativeness has to be strong. Radio Corp. of Am. v. E. J. Edmond & Co., 20 F. (2d) 929, 930 (D. C., S. D. N. Y.), and see Boyce v. Stewart Warner, etc., Corp., 220 F. 118, 126 (C. C. A. 2). We agree with the court below that they did not carry the burden. The patents have gone into extensive use and attained commercial success. Invalidity on the ground of incomplete disclosure or inoperativeness was not established.

Validity of the product patent is further challenged on the ground that it does not relate to "any new and useful * * * manufacture, or composition of matter, or any new and useful improvements thereof. * * * * "; 35 USCA § 31. This contention is rested upon Am. Fruit Growers, Inc., v. Brogdex Co., 283 U. S. 1, 51 S. Ct. 328, 75 L. Ed. 801, where it was held that an orange, the rind of which was impregnated with borax by immersion in a solution, and thereby rendered resistant to blue mold decay, was not a "manufacture" within the meaning of the statute relating to patents. The Supreme Court said (page 11 of 283 U. S., 51 S. Ct. 328, 330, 75 L. Ed. 801):

"Addition of borax to the rind of natural fruit does not produce from the raw material an article for use which possesses a new or distinctive form, quality, or property. The added substance only protects the natural article against deterioration by inhibiting development of extraneous spores upon the rind. There is no change in the name, appearance, or general character of the fruit. It remains a fresh orange, fit only for the same beneficial uses as theretofore."

It can hardly be doubted that a naturally dark-colored skin which has been bleached and dyed a light color is an article of manufacture. Certainly it cannot be said of it, as of the orange, that there is no change in its "name, appearance or general character." In none of the three stages sought to be protected by the present patent were the dressed skins in their natural state. While it was true of the orange that impregnation of its rind with borax only protected the natural article against deterioration by mold and gave it no new beneficial uses, the same cannot be said of impregnation of the unbleached skin with ferrous sulphate. By such impregnation the skin attains a new quality which gives it a new beneficial use; it fits it to be used for bleaching by a method which could not without such impregnation be successfully employed. An orange has the same use whether or not impregnated with borax. A fur skin unimpregnated with ferrous sulphate cannot be used in the same way as one which has been so impregnated. The orange case does not, in our opinion, require a decision that the product patent in suit is invalid.

This brings us to the question of infringement. With respect to several of the processes and products of the defendants, the plaintiff conceded upon the trial that there was no infringement. No such concession was made with respect to the "ermine" skins produced by the defendants as described in the second part of their answer to interrogatory 111. But the defendants contend that these would not have been held infringements had not the claims of the patents, and particularly claims 17 and 20 of the product patent, received too broad a construction. Claims 17 and 20 read as follows:

"17. As an article of manufacture, a bleached and dyed fur skin or the like having the fibres of the leather and hair making up the fur skin or the like substantially unimpaired as to strength, texture and lustre.

"20. As an article of manufacture, a

bleached and dyed fur skin or the like having the fibres of the leather and hair making up the fur skin or the like substantially unimpaired as to strength, texture and lustre, and having the appearance, feel and texture of a fur skin or the like of the same species dyed to the same color from the natural white or other light colored fur skin or the like."

Taking these claims at their face and unlimited by the disclosure of the process described in the specifications, they would cover every bleached and dyed skin however produced, provided only that the process had not impaired the strength, texture, or luster of the leather and hair. True, it has been said that product claims may cover the article discovered, "however produced." Maurer v. Dickerson, 113 F. 870, 874, 877 (C. C. A. 3); Lamb Knit Goods Co. v. Lamb Glove & Mitten Co., 120 F. 267, 269 (C. C. A. 6); Merrill v. Yeomans, 94 U. S. 568, 571, 24 L. Ed. 235. But no such broad statement can be accepted as universally true. The statement has as frequently been made that a patent may not issue for a result as such, because that would extend the monopoly beyond the teachings of the inventor, and would prevent all others from making the same thing by any means whatsoever. Le Roy v. Tatham, 14 How. 156, 158, 174, 14 L. Ed. 367; O'Reilly v. Morse, 15 How. 62, 112, 14 L. Ed. 601; Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, 257, 48 S. Ct. 474, 476, 72 L. Ed. 868. In the case last cited, the court invalidated a product claim for a starch glue "having substantially the properties of animal glue." While it is true that one may have both a process and a patent product and that the latter will sometimes cover more than the product of the process [see Dunn Wire-Cut Lug Brick Co. v. Toronto Fire Clay Co., 259 F. 258 (C. C. A. 6); Duplate Corp. v. Triplex Safety Glass Co., 42 F.(2d) 739 (C. C. A. 3)], nevertheless such product, like any other patented invention, must not be defined exclusively in terms of its use or function. On this principle the product claim in the above-mentioned Glue Case was held defective. That case is closely analogous to the case at bar. Unless claims 17 and 20 are read with the process implied, there is nothing to define them except that the skins shall be so bleached and dyed as to retain their strength, texture, and luster unimpaired and have the appearance of white or light colored skins dyed to the same color. This is an attempt to secure protection for the result itself without reference to the rather limited contribution to the art made by the patentee's discovery. As a description of the invention, claims 17 and

20 are insufficient, and, if allowed broadly, would extend the patent monopoly beyond the invention. The patent contains other claims for the embodiment of the process in bleached and dyed fur skins. As these exhaust the invention, claims 17 and 20 cannot be limited by reading into them the process described in the specification. Without such limitation they must, for the reasons above stated, be held invalid.

But the elimination of claims 17 and 20 does not relieve the defendants from the charge of infringement. Their process involved the use of ferrous sulphate, ammonium chloride, and tartar emetic before the bleaching stage. As already explained, the patents say nothing of tartar emetic, but prescribe the other two ingredients. The addition of tartar emetic may have been an improvement, but that is immaterial; it did not avoid the practice of the patented process. Nor is it material that the defendants had discontinued their use of the patented process before the present suit was brought. General Electric Co. v. New England Electric Mfg. Co., 128 F. 738 (C. C. A. 2). See 1 Walker, Patents (6th Ed.) § 741. Consequently plaintiff is entitled to its decree, but the latter must be modified to the extent made necessary by our decision that claims 17 and 20 are invalid.

The final point of the appellants urges that error was committed in excluding Exhibit UU for identification. This was a subsequent patent issued to the same patentees for a method of fabricating felt by "carroting" fur. The defendants sought to introduce it on the issue of the inoperativeness of the patents in suit. The excluded patent calls for immersion of the fur skins in nitrate of mercury, and explains that, after the carroting has been partially done by mercury, the same process as is disclosed in the patents in suit will not only bleach the skin, but will complete the carroting. Carroting fur weakens and mats the hair in a manner to ruin the skin for use as a pelt; it is the antithesis of the protection of the fur claimed for the ferrous sulphate solution in the patents in suit. It is argued, therefore, that the excluded patent should have been received as an admission against interest by the patentees. But the process which it discloses differs materially from that of the patents in suit. It does not follow that, because the patented process in suit will "complete" a carroting already started by nitrate of mercury, it will itself start a carroting process. Furthermore the excluded patent states that "hydrogen peroxide or

242

equivalent bleaching agent acts as a non-metallic carroting agent to complete the carroting operation only partially completed by the acid solution of nitrate of mercury." We find no statement that ferrous sulphate (the protective agent of the patents in suit) performs any carroting function. It is said in the excluded patent that it protects the leather and hair "from any destructive or weakening effect of the bleaching agent" and at the same time accelerates the bleaching action and the completion of the carroting operation. From the foregoing it is apparent that the excluded patent does not purport to achieve contradictory results by a process essentially the same as that disclosed in the patents in suit. While some light might have been obtained by cross-examining Austin with reference to it, we think the excluded patent was too remote from the issue of inoperativeness to require reversal because of its exclusion.

The decree must be modified in so far as claims 17 and 20 of patent No. 1,564,378 were held valid and infringed; thus modified, it is affirmed.