## NATIONAL ELECTRIC PRODUCTS CORPORATION v. CIRCLE FLEXIBLE CONDUIT CO., Inc.

### No. 5551.

District Court, E. D. New York.
March 1, 1932.

See, also, 57 F.(2d) 219.

Cooper, Kerr & Dunham, of New York City (John C. Kerr, of New York City, of counsel), for plaintiff.

Usina & Rauber, of New York City (Benjamin T. Rauber and D. Anthony Usina, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a suit in which infringement is alleged of patents Nos. 1,687,013 granted October 9, 1928 to O. A. Frederickson for an armored electric cable, and No. 1,801,549, granted April 21, 1931, to the same inventor for an improvement in antishort bushing.

Defenses of invalidity and noninfringement are presented.

The former patent relates to improvements in the construction of electric conductors having a metallic outer sheath. Cables of the general character it is stated in the specification, ordinarily consist of two or more insulated conductors inclosed in an interlocked insulating material such as braid-

ed fabric and about which a spirally wound metallic jacket is placed. With the installation of such cables, the inventor found that the insulation was imperilled and the danger of short circuiting invited by the sawing of the cables.

The prior art, as interpreted by the inventor, sought to remedy the objectionable condition by placing an exterior metal sleeve or ferrule about the end of the metallic sheath. That means and method Frederickson found impractical.

In avoidance of the difficulties encountered, the inventor suggests the winding of an insulated conductor or conductors with stripped material of an insulating fibrous nature, and the interposition of a bushing between the insulating conductor and the metallic sheath.

Another feature of the invention consists in forming the bushing as a split tubular structure having its adjacent longitudinally split edges in separate relationship, so that the bushing may be applied about the conductors at a point adjacent to the end of the cut-off metallic armor, and by pinching or contracting the diameter of the bushing it may readily be inserted between the inner surface of the armor and the insulated conductors. It is said that the use of a spirally wound insulated covering about the covered conductors in place of the woven outer coverings has an advantage, in that the spirally wound fibrous strip may be formed of compressible material so as to constitute a cushion within the armored sheath, to prevent a sliding movement of the covered conductors.

The inventor indicates that, before the bushing may be inserted in the armored sheath, it is necessary to provide a clearance space. This is done by drawing several coils of the fibrous material out of the space between the covered conductors and the metal sheath.

All of the claims of the patent are in issue. Claim 1 reads as follows: "1. An armored electric conductor comprising an insulated wire a protecting covering of insulating material surrounding the insulated wire, a metallic sheath or jacket enclosing the protecting covering and insulated wire, and a bushing interposed between the insulated wire and the metallic sheath or jacket to protect the wire insulation from the edge formed at the end of the metallic sheath or jacket."

British patent No. 2969 to Moseley shows a cable of insulated wires having wound tapes, saturated in a mixture of insulated material, and a bushing, referred to as an insulator of ebonite or other suitable material, to protect the wires from contact with the metal tubes. This patent discloses every element of claim 1.

British patent No. 102,137 of 1916 to Wilson has for its object an end finishing bushing for application to the braided wire covering of cables, and consists of a sheet metal sleeve adapted to fit over the outside of the braided wire covering and having an inner sleeve portion constructed to fit between the braided wire and the insulation of the conductors forming the cable. This construction is, of course, not the construction in claim 1, but it clearly indicates the use of an end finishing bushing in insulated wire cables.

British patent No. 182,489 of 1923 to Weurman shows the use of a bushing in tubes for electrical installations.

French patent No. 544,018 to Daram issued June 13, 1922, discloses a cable embodying every element of this claim save the bushing. There are shown electric wires a, having an insulating covering b, a protecting covering of insulating material b, consisting of bands of paper, and a metallic sheath c closing the protecting covering and the insulating wire.

From the foregoing, I think claim 1 is anticipated by the Moseley patent; and, in view of what is shown concerning the use and structure of bushings in patents to Moseley, Wilson, and Weurman, I cannot see that it would require any invention to add a bushing to the construction shown in the French patent to Daram.

Claim 2 of the patent in suit is similar to claim 1, except that the bushing is stated to be of insulating material. Certainly it would require no invention to make this bushing of insulating material if it was to be in close proximity to the ends of an electric conductor.

But the patents to Moseley and Weurman both disclose insulating bushings, as does British patent No. 206,275 of 1923 to Wright. That patent was for an improved bush for electric tubing and conduits; and it is stated that "the bush may be made of any suitable metal, hard rubber fibre or other suitable material." From this patent it also appears that the bush is internally shaped so as to protect the insulation from any "arris" on the tube.

The article of Maycock, Defendant's Exhibit M, refers to bushings for electric wiring, which may be made of ebonite or hard

wood, "so that cables shall not have their insulation damaged by the sharp ends."

Claim 3 is similar to claim 1, except that the bushing is defined as "split." The reason for this type of bushing is to enable it more easily to be inserted over the conductors and insulating structure. Such bushings were described in the Croft publication "Wiring for Light and Power"; in the cut of the three conductor cable, page 99, such a bushing is disclosed.

The form is also shown in United States patent No. 1,118,035 to Meschenmoser, issued November 24, 1914. The patent states: "7 indicates bushings or sleeves preferably of insulating material and preferably divided longitudinally into two parts."

Letters patent No. 1,192,150 to Appleton, issued July 25, 1916, for an invention relating to improved connectors for electric conduits, discloses a bushing referred to therein as a thimble having a longitudinal slot running throughout its length.

Indeed, even if the art failed to reveal split bushings, it would seem to be a most obvious expedient to split the bushing in order to attain the purpose sought by the patentee herein.

Claim 4 of the patent differs from claim 1, only in respect to a limitation that the insulating material be "wrapped around the insulated wire"; and also in providing for a flange at the outer end of the bushing.

The patent to Greenfield shows a bushing with a flange.

Patent No. 848,819 to Freeman, issued April 2, 1907, for a bushing coupling, discloses an electric conduit having a lining wound in helical convolutions. The bushing disclosed has a flange or turned-over portion.

The same form of thimble or bushing is shown in United States patent No. 973,238 to Tideman, issued October 18, 1910.

As to the insulating material being wrapped around the insulated wire, there can be no invention whatsoever in that limitation. See the French patent to Daram, and the British patent to Wilson.

Claim 5 is somewhat narrower than claim 1, because it provides for the electric conductors to be laid side by side. The arrangement of insulated conductors in that form is very old indeed. It is shown in the Lawrence catalogue and in Klein patent No. 799,989.

Claim 7 defines a device more limited than that of claim 1, in adding the limitation that the protecting covering for the insulating wire comprises "a strip of insulating material interposed between the insulated wire and metallic sheath and adapted for ready removal from the interior of the end portion of the metallic sheath to provide a clearance space between the sheath and insulated wire."

In view of the prior art discussed, I cannot believe that this claim shows any invention; and my opinion is the same of claims 8, 9, and 10, which may be considered in the same category.

For the reasons indicated, therefore, I believe all the claims of this patent are invalid.

There remains for consideration Frederickson patent No. 1,801,549. The object of the invention described therein is the provision of a bushing of a particular configuration adapted to protect the insulated wire against abrasion from the end of a metallic conduit, and to be inserted readily in position in the end of the conduit.

Of the claims of this patent, 1, 2, 3, and 7 are in issue. Claim 1 reads: "1. An anti-short bushing adapted for insertion in the end of a conduit formed of flexible yielding fibrous material and provided with a curved over lip at one end thereof for the purpose described."

From what has been said in discussing the prior art of the earlier Frederickson patent, it would not appear that the selection of a bushing of particular configuration and of a particular kind of material, i. e. (fibrous) would constitute invention. However, additional prior art can be referred to in support of that conclusion.

U. S. patent No. 581,064 to Coghlin, issued April 20, 1897, refers to "a thin bushing of fibre inserted into the main bushing," and is adapted for insertion in the end of the conduit.

British patent to Wright discloses a bushing made of fiber.

Claim 2 narrows the device of claim 1 by referring to the bushing as having a tapered shank portion. I cannot possibly see how the tapering of the shank would in the slightest degree involve invention. It is certainly evidence of but expected mechanical skill, and that of not a very high order. However, the art discloses such forms of bushings. For example, it is shown in the Croft publication "Wiring for Light and Power," and on page 9 of the Russell & Stowell publication, as well as in Meschenmoser United States patent No. 1,118,035, Fig. 5. It is the type of bushing shown in Defendant's Exhibit D made by the Brandywine Fibre Products Company

in 1921, and shown also in the booklet of that company, Defendant's Exhibit F.

This bushing certainly is adapted to be used in the end of a conduit.

Claim 3 is similar to claim 1, but narrower, in that the limitation of a tapered shank portion is set forth.

Claim 7 reads as follows: "An anti-short bushing adapted for insertion in the end of a conduit, said bushing being formed of flexible sheet insulating material so as to yield when inserted in the conduit and to afterwards expand to grip the conduit, said bushing having a tapering shank portion which is longitudinally open and provided with marginal edges adapted to overlap to a greater extent when inserted in a conduit."

It is seen that it is the narrowest of the claims, but its limitations do not save it.

In addition to the prior art heretofore referred to, it may be noted that the handbook of the Standard Underground Cable Company published in 1906 shows a duct-mouth protector, which obviously is intended to be inserted in the end of the conduit; a similar form is shown in the Electrical World of April 22, 1922, in the figure bearing the legend "Zinc Fairleader or Duct Cable Protector." Such a structure is also referred to in the Electrical World in an article published December 8, 1923. It is said therein, "Apparently very little has been done to avoid the wear on the sheath at the duct edge, except to install cushions of wood, leather, metal or lead."

Now it is true that there is no definite disclosure showing bushings, as limited in the claim, provided "with marginal edges adapted to overlap." Such adaptation for overlapping can certainly be brought about by the use of a flexible material in any of the split bushings of the prior art.

In conclusion I may state that these two patents to my mind present no evidence of invention. The electrical cable art at the time of the filing of the application of the earlier patent on December 7, 1927, was exceedingly well developed. It seems to me that the inventor did nothing more than to take a standard form of lead sheath or armored cable and protect the ends of a severed portion by using a bushing which was well known in the art. So that, if one's reading of the prior art has been a little too severe in its application to the aggregation of the earlier patent and to the simple bushing of the second patent, it would, nevertheless, be true that the patentee's contribution to the art, if any, was but slight and obvious. Such an improvement or contribution should not be rewarded with the stamp of validity of the patents granted.

As was said in Rosenberg v. Carr Fastener Co. (C. C. A.) 51 F.(2d) 1014, 1019, "Very recent decisions of the Supreme Court indicate that a substantial step beyond the prior art must be taken in order to support a valid patent. Here the advance over the invention of 1913, if it be thought to have occurred, was altogether too slight and obvious. De Forest Radio Co. v. General Electric Co. [283 U. S. 664], 51 S. Ct. 563, 75 L. Ed. 1339, decided May 25, 1931; Carbice Corporation v. American Patents Development Corporation [283 U. S. 420], 51 S. Ct. 496, 75 L. Ed. 1153, decided May 18, 1931; American Fruit Growers, Inc., v. Brogdex Co., 283 U. S. 1, 51 S. Ct. 328, 75 L. Ed. 801; Smith v. Springdale Amusement Park, Ltd., 283 U. S. 121, 51 S. Ct. 368, 75 L. Ed. 878."

Evidence of successful commercial use was offered by the plaintiff as evidence of invention; but I am by no means convinced that such successful and extensive use was not in large part aided by efficient exploitation.

The bill may be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.