**MOORE v. LANSBURGH & BROS.**
No. 5584.

Court of Appeals of the District of Columbia.
Argued Dec. 7, 1932.
Decided Jan. 16, 1933.

Rehearing Denied Feb. 3, 1933.

Charles J. Williamson and J. Raymond Hoover, both of Washington, D. C., for appellant.

William F. Hall, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

■ Appeal from a decree in the Supreme Court of the District in a patent infringement suit dismissing the bill on the ground of non-infringement.

We shall allude to the parties as plaintiff and defendant. The patent (No. 1,100,319) was issued to plaintiff June 16, 1914. It therefore expired in June, 1931. According to the specification, it related to an "Improvement in Rubbers." While the claims of a patent measure the invention (Paper Bag Patent Case, 210 U. S. 405, 419, 28 S. Ct. 748, 52 L. Ed. 1122), they "must always be explained by and read in connection with the specification" (American Fruit Growers, Inc., v. Brogdex Co., 283 U. S. 1, 6, 51 S. Ct. 328, 75 L. Ed. 801; Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 432, 22 S. Ct. 698, 46 L. Ed. 968). It will be helpful in determining the scope of the patent to inquire into the circumstances which gave rise to it. In a letter to a rubber company dated June 19, 1914, plaintiff inclosed a copy of his specification and sought to interest the company in his patent. He said: "The invention occurred to me one day after I had *struggled*, profanely, with some low-quarter rubbers, which finally *split down the heel* in my efforts to get them on. I hadn't bought a rubber shoe for over 15 years because of the foregoing objections, and there are probably hundreds of thousands of men like me." In his specification he pointed out that the ordinary rubber shoe of the Oxford type is troublesome to put on "by reason of the close, or snug fit of the heel portion to the shoe, because of the contact of the shoe heel with the top edge of the heel portion of the rubber which bends, or crumples such top edge inward and usually necessitates the thrusting of the fingers into the rubber shoe for the purpose of stretching or putting the heel portion thereof over the foot." The object of the invention, according to the specification, was "to overcome these troubles by a simple and inexpensive device * * * which will at the same time be an advantage in other respects, such, for example, as strengthening the rubber *at the heel* where it is likely to split

from undue pressure, protecting the lower portion of the garment of the wearer from wet, and adding to the comfort of the wearer in cold weather by furnishing additional covering for the *foot*." (Italics ours.) The invention, the specification continued, might be embodied in various forms, and was applicable to similar shapes of footwear, "such as slippers, or footwear of the Oxford style." We here insert the patent drawing:

FIG. 1

FIG 2

The "simple and inexpensive device" is alluded to in the description of the drawing as "a flap, or lip 12, preferably of some flexible and elastic material, such as rubber." This, it is alleged, is adapted to be turned upward or downward. When turned downward, it fits snugly "or conforms to the contiguous heel-protecting portion of the rubber, in which last-named position it forms a brace, or reinforcement for the rubber around the back of the heel portion and supports it against strains tending to split, or tear it down the back." When in raised position, the flap or lip "performs the function of a shoehorn," and affords "a convenient handle for the fingers."

■ There are three claims. Claims 1 and 2 are in terms limited to footwear of the Oxford type. Claim 3 reads as follows: "A rubber shoe having a flap at the heel portion which is shiftable vertically from a position below the top edge of the heel portion to one above the same, the flap being of elastic ma-

terial and its movement taking place about the top edge of the heel portion."

Plaintiff never marketed his device, nor did he even make or cause to be made a shoe embodying it until such a sample was made for use in this litigation. The patent, therefore, is a "paper patent."

Claim 3 is not specifically limited to low-quarter rubber shoes, but, when considered in the light of the specification (American Fruit Growers, Inc., v. Brogdex Co., 283 U. S. 1, 6, 51 S. Ct. 328, 75 L. Ed. 801), it is apparent that it relates to that type of shoe. Plaintiff's problem was to provide "a convenient handle" by which low-quarter rubbers could be pulled over the shoe. Such a "flap or lip" would serve no useful purpose in any other type of rubber shoe, and in no other type would the "flap or lip" when turned down furnish any reinforcement "at the heel."

The overshoe of Watkinson (patent No. 144,810, issued November 18, 1873) affords greater protection to the foot than plaintiff's rubber. This is manifest from a comparison of Fig. 2 of plaintiff's drawing with Watkinson's drawing, here reproduced:

Watkinson in his specification stated that his object was to construct a shoe which should extend up the heel and over the instep so as to protect both. The heel portion in the Watkinson construction is relatively as high as the heel portion with the flap or lip in a vertical position in plaintiff's construction, and is capable of serving the same purpose. There is no magic in the term "flap or lip" as used by plaintiff. The heel portion of the Watkinson rubber overshoe is substantially the same as the heel portion of that of plaintiff's rubber, and is capable of being shifted vertically "from a position below the top edge of the heel portion to one above the same." In other words, if this shiftable characteristic was an advantage, it was inherent in Watkinson's disclosed and claimed invention and inured to his benefit. Lyon v. Boh (C. C. A. 2) 10 F.(2d) 30.

Defendant's "Shuglov" type of galosh ap-

peared on the market in 1927 and met with instant favor. It is designed to fit snugly over the low shoe worn by women and to conform to the ankle and contiguous portions of the foot and leg exposed above the shoe. It is provided with a "cuff or collar" which may be turned down, and when turned up affords additional protection for the leg and stocking above the ankle. The "cuff or collar" performs a different function, and was intended to perform a different function, than plaintiff's "flap or lip."

A reversible "cuff or collar" was a characteristic feature of the so-called "slumber slippers" sold throughout the United States as early as July, 1905. It was designed to "be turned up to protect the ankle of the wearer of the slipper, or turned down to provide an ornamental cuff at the top of the slipper, when such protection was not desired."

We are of the view that the Watkinson patent constituted an anticipation of plaintiff's disclosure; but, assuming that it did not, we are convinced that defendant's "cuff or collar" (disclosed, as we have seen, in the "slumber slipper" of 1905) did not infringe plaintiff's "flap or lip."

The decree, therefore, is affirmed, with costs.

Affirmed.