RANDOLPH LABORATORIES, Inc. v. SPECIALTIES DEVELOPMENT CORP. et al.

Nos. 9980, 9982.

United States Court of Appeals
Third Circuit.

Argued Oct. 14, 1952.

Decided Nov. 13, 1952.

W. Brown Morton, Jr., New York City, for appellant.

Ralph M. Snyder, Chicago, Ill., for appellees.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff in this case has petitioned for leave to file a motion in the District Court for the District of New Jersey to reopen an interlocutory judgment of that court against it in so far as the judgment holds claim 16 of the Mapes Reissue Patent No. 18,839 to be valid. The judgment in question was affirmed by this court with slight modifications on December 21, 1949. 178 F.2d 477. The grounds for the petition are that Mapes obtained the allowance of claim 16 of his reissue patent by the patent office although he well knew of the existence and prior public use of a device known as the "Fyre-Freez" valve which was a clear anticipation of the subject matter of the claim, that in failing to disclose that he was not the first inventor of the subject matter of claim 16 Mapes was guilty of a fraud upon the patent office, the district court and this court, and that by reason of these facts the interlocutory judgment of the district court holding claim 16 to be valid is erroneous and should be reopened and reconsidered, no final judgment having yet been entered in the district court.

The Mapes Reissue Patent No. 18,839 relates to a recoil prevention safety device used in connection with a portable high pressure gas cylinder, such as a carbon dioxide fire extinguisher. The district court found that Mapes was the first inventor of the subject matter claimed in his patent and concluded that claim 16, inter alia, of the patent was valid. In affirming the district court, this court said, 178 F.2d 477, 481:

"We think that the foregoing findings have adequate support in the evidence. The problem which the patent solved arose because of the tremendous pressures involved in these cylinders which will cause a recoil if the gas is permitted to escape. In such a situation the continuous pressure of the escaping gas in one direction drives the cylinder in the opposite direction with serious danger to person and property. Campbell devised a safety cap with oppositely disposed ports on its sides through which the gas could escape, so that the recoil from each port is equal and opposite and therefore is balanced out. The difficulty with this was that the safety cap had to be removed when filling the cylinder and was frequently not replaced after the filling was over. Mapes' contribution was to show that such a safety device could be so placed that a coupling to the intake or discharge pipe could be affixed to it or placed over it and the cylinder filled or discharged through it without it being removed. This was a great advantage for it made it possible to keep the safety device in place at all times and thus make certain that it would be in place when needed. The plaintiff urges, nonetheless, that it did not involve patentable invention over the prior art. The Mapes device has had great commercial success, however, and while the question is close we cannot say that the district court erred in finding invention in the Mapes device and in holding the patent valid."

The plaintiff now calls our attention to the Fyre-Freez valve which had been manufactured some years prior to the time that Mapes filed his patent application, a physical embodiment of which valve it has now discovered, and it strongly urges that this was a clear anticipation of the subject matter of claim 16. The plaintiff concedes that the mechanism of the Fyre-Freez valve is fully disclosed in the drawings accompanying the Minor patent No. 1,879,397, the application for which was filed on the same day on which Mapes filed his application, and which was subsequently reissued as No. 19,087. The plaintiff also concedes that at the trial of the present case in the district court the inventor Mapes testified as to the existence of the Fyre-

Freez device, accurately describing it in his testimony.[1]

It thus appears that the structure which the plaintiff now asserts to be a complete anticipation of claim 16 was disclosed to the patent office at the time the Mapes application was filed and was accurately described by Mapes to the district court. Nonetheless the plaintiff contends that since Mapes did not produce a physical exhibit of the Fyre-Freez valve, even though he was not asked to do so, it did not then appreciate the fact that this valve contained what it now asserts is the combination which is the subject matter of claim 16. Indeed, the plaintiff says that it did not realize this fact until after its recent acquisition of a physical embodiment of the Fyre-Freez valve.

The defendants strongly urge that under these circumstances the question as to whether the Fyre-Freez device was such an anticipation of the subject matter of claim 16 of the Mapes Reissue Patent as to render that claim invalid was actually presented to and decided both by the district court and this court on appeal and that by its present petition the plaintiff is seeking by charging fraud to secure a rehearing of an issue which has already been fully heard and decided against it. We think that there is much justification for the defendants so characterizing the plaintiff's present application. Nonetheless if we thought that there was any probability that

Mapes or his assignee, defendant Walter Kidde & Company, Incorporated, had been guilty of fraud in procuring the allowance of claim 16 we would not hesitate to grant the plaintiff the leave which it now requests. We are fully satisfied, however, for the reasons which will be stated that the Fyre-Freez valve did not anticipate the subject matter of claim 16, properly understood, and that accordingly Mapes could not be held guilty of any fraud upon the patent office in failing to disclose the existence of the Fyre-Freez valve in the prior art.

Claim 16 of the Mapes Reissue Patent reads as follows:

"The combination with a high pressure gas container and gas release device therefor, of a recoil preventing safety device arranged to have a conducting means attached thereover to permit the delivery of gas to the conducting means from the container without the necessity of removing the recoil preventing device."

In this combination claim the significant element is the one described as "a recoil preventing safety device". Unless that element was present in the Fyre-Freez valve the latter obviously did not anticipate the claim. This element of the claim must be considered in the light of the specification and limited to what the patentee described therein as the type of device he had in mind.[2] When we turn to the specifica-

---

[1] Mapes testified (Transcript pages 438–439):

"A competing company, the Fire Freeze Company, which we later bought out, had an extinguisher in 1926 and '27 which had a device on it to prevent recoil. They had given this matter some study, as we had, and they provided a moving check in the outlet, a little ball that when the hose was detached, checked and the gas couldn't come out, so there was no recoil; but when the hose was screwed on, the check was displaced back to leave a passage through which the gas could go. It involved moving parts, it was a complicated structure and stuck frequently, and we didn't consider it satisfactory. In other words, moving parts in a device of that nature to us appeared dangerous, because it would prevent operation, on occasion stick and cause trouble. And, working

some time, I then hit upon the idea of the recoil preventing coupling, as covered in my patent, and the device is a combination of a device to prevent recoil, since it gives a balancing of the discharge, the gas shoots out when the coupling is removed, to balance a jet on the other side, so that the device will stand still and not recoil."

[2] Carnegie Steel Co. v. Cambria Iron Co., 1902, 185 U.S. 403, 432, 22 S.Ct. 698, 46 L.Ed. 968; American Fruit Growers, Inc., v. Brogdex Co., 1931, 283 U.S. 1, 6, 51 S.Ct. 328, 75 L.Ed. 801; Samuel M. Langston Co. v. Continental Container Corp., 2 Cir., 1936, 80 F.2d 847, 849; Lester v. American Rolling Mill Co., 6 Cir., 1938, 95 F.2d 772, 773; Westinghouse Electric Corp., v. Hanovia Chem. & Mfg. Co., 3 Cir., 1949, 179 F.2d 293, 296–297.

tion we find that he has fully described the recoil preventing safety device which he has included. After referring to the danger of recoil in the case of the free and rapid escape of gas from a high pressure cylinder the patentee says:

"In order to prevent such an occurrence it has been proposed therefore to provide in the outlet of the valve which controls the discharge of gas from the container a suitable, detachable safety cap which is secured in place when there is no pipe connection to the container *so that should the gas valve be opened the gas escapes in a manner to prevent any serious reaction on the container. Such devices are known as recoil preventing safety caps.* These devices as now known are, however, of such construction and form that they must be removed from the control valve when a pipe or hose connection is made thereto and, as a result, they are liable to and often do become lost or misplaced so that they are not handy when the pipe or hose is disconnected." [Emphasis supplied.]

It will thus be seen that what Mapes had in mind was a detachable cap to be secured to the outlet of the valve of the cylinder upon or over which the outlet pipe or hose connection could be secured and through which when there was no pipe connection and the gas valve was opened the gas would escape in a manner to prevent the recoil of the container. The specification and accompanying drawings show that this was to be accomplished through the use of two pairs of diametrically opposite discharge ports in the cap so that the gas escaping at high pressure through the ports would be balanced by the reaction of each discharging stream on the one directly opposite it, thereby eliminating any recoil. Thus it appears that the basic feature of the recoil preventing safety device of the Mapes Reissue Patent lies in the use of oppositely disposed escape ports which do not prevent the escape of gas from the container but serve merely to neutralize its recoil effect.

It is perfectly clear that the Fyre-Freez valve does not contain a nonrecoil safety device of this type. On the contrary the device of the Fyre-Freez valve consists merely of a ball check or back pressure valve placed within the outlet port to which the discharge pipe or hose connection is attached. Its function is to operate as a check valve to stop entirely the outward flow of gas at all times except when it is locked out of operation by the attaching of the discharge hose or pipe, which engages a protruding plate attached to the ball of the check valve in such a way as to unseat the ball valve and permit the outward passage of gas around it.

Thus the device of the Fyre-Freez valve prevented recoil only in the sense that as a check valve it stopped the escape of gas from which recoil might otherwise have resulted. The device described by Mapes in his specification was of a wholly different character. It was not a valve and did not stop or even retard the escape of gas. On the contrary it permitted gas to escape freely but channelled its escape in such opposite directions that its recoil producing effect was balanced and thus eliminated.

It was, and still is, our view that the nature of the "recoil preventing safety device" of claim 16 of the Mapes Reissue Patent must be regarded as defined by the specification of the patent and as limited to the type of device therein described, namely, one which without hindering the escape of gas so diffuses its flow as to prevent recoil. So limited the claim does not read upon a device, such as the Fyre-Freez valve, whose nonrecoil safety feature consists merely of a check valve which stops the escape of gas. It follows, as both the district court and this court have heretofore held, that the Fyre-Freez valve did not anticipate the subject matter of claim 16. Mapes was, therefore, not guilty of fraud in not disclosing to the Patent Office the prior use of that device.

The petition will be denied.