54 CCPA

**Application of John O. HRUBY, Jr.**

**Patent Appeal Nos. 7652–7655.**

United States Court of Customs and Patent Appeals.

March 16, 1967.

Vernon D. Beehler, Los Angeles, Cal., Francis D. Thomas, Jr., Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

These appeals are from split decisions of the Patent Office Board of Appeals wherein the majority affirmed the rejection of appellant's claims in four design patent applications, serial Nos. 70,-815, 70,816, 70,827, 70,828, all filed July 6, 1962, each entitled "Water Fountain."

The appeals of the four applications were argued as one, before both the board and this court, and the single issue in each is the same: is the subject matter sought to be patented within the statutory subject matter designated in 35 USC 171, namely, "an article of manufacture"?

The single claim in each application reads:

The ornamental design for a water fountain as shown and described.

As illustrative of the nature of the designs it will suffice to reproduce the drawings from one of the cases as typical, serial No. 70,816:

The full description, referred to in the claim, consisted, when filed, of the drawings and the following:

Fig. 1 is a perspective view of a water fountain showing my new design and showing in broken lines a catch basin and a fountain producing device; and

Fig. 2 is a cross section through the water fountain taken upon a plane indicated on Fig. 1 by line 2–2, and including a directional arrow which shows that the water fountain rotates.

In an office action the examiner said:

The arrow on Fig. 2 indicating that the instant subject matter rotates should be removed as superfluous.
* * *

In view of the above proposed correction to the drawing, and for brevity, it is suggested that the description of Fig. 2 be revised to read—*Fig. 2*

*is a cross-sectional view thereof taken on line 2–2 of Fig. 1.—*

Appellant obligingly so amended his applications which, we assume, did not change the fact that the water fountain rotates.

No references are relied on.

The sole rejection was that the claim in each case does not define an article of manufacture. The precise question before us, therefore, is whether that portion of a water fountain which is composed entirely of water in motion is within the statutory term "article of manufacture." This appears to be a question of first impression without any closely analogous case.

The board majority disposed of the precedents cited by the examiner [1] with the statement that it did "not find therein such analogy to the present issues as

to be considered controlling." We agree with that appraisal. It said, "we appreciate that the forms created in water by fountains are a well recognized and much used decorative device" and that it "is evident as urged by appellant that the shape created in a specific fountain is manufactured by man in the sense that water as a raw material is put into planned patterns of motion for accomplishment of a decorative purpose." The majority further expressed disagreement with the examiner's objection that the water of which the designs are produced is a "natural" product, and wisely so as that argument would apply to every article made of wood or stone. Nor did it think much of the argument that the water droplets constantly changed position. Nevertheless the board majority concluded that the water display itself is not "an article of manufacture." The only reasons we can perceive for this conclusion in the board's opinion are that "the pattern created is wholly a fleeting product of nozzle arrangements and control of operating pressure or pressures" and that "the pattern exists only as a product or 'effect' of the mechanical organization during its continued operation * * *."

The dissenting member of the board soundly answered the "fleeting" argument as follows:

Although appellant did not disclose the particular means for producing the fountain effect, it is recognized that if certain parameters such as orifice configuration, water pressure and freedom from disturbing atmospheric conditions are maintained, the ornamental shape of the fountain will remain substantially constant and will at such times present an over-all appearance virtually the same from day to day. Under these conditions, I am not influenced by the statement of the majority "However, it seems to us to be

inescapable that the pattern created is wholly a fleeting product of nozzle arrangement and control of operating pressure or pressures."

We agree with the dissenter on that and would add that the permanence of any design is a function of the materials in which it is embodied and the effects of the environment thereon. Considering the fact that the Romans and the French built now famous fountains hundreds of years ago which still produce the same water designs today, the notion that a fountain is "fleeting" is not one which will "hold water." See the Columbia Encyclopedia under "fountain," for example. The dissenting member continued:

It is true that a particular droplet or droplets may be "a fleeting product" but the fountain itself is not. The fountain in its entirety under proper conditions presents a product of constant appearance rather than a fleeting product. I assume that the majority would find no objection if a design effect would be produced in the form of frozen water. Is it logical or reasonable to find objection to a related design effect also having a constant appearance merely because of continuous movement of water droplets? I am unable to find any logical or legal basis for such a distinction. It must be remembered that in a design it is the over-all appearance due to the form or shape of the product that is determinative of patentability and not the minutia of the details that form the design.

Again we agree. The physicists and philosophers teach us that what we think we see is not really there at all; that the very concept of "solid" is something of an illusion and objects are mostly empty space, "substance" consisting of nuclei with electrons orbiting about them. In common parlance, however, what we see

I. American Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801 (1931); American Meri-Lei Corp. v. F. W. Woolworth Co., 34 F.2d 211 (E.D. N.Y.1929); Ex parte Sweeney, 123 USPQ 506 (Bd.Apls.1959).

here are fountains, not droplets of water moving in space, any more than we see nuclei and electrons or atoms or molecules in solid objects.

■ Fountains are what appellant (or someone connected with him) sells. At oral argument, counsel presented us with a stereoscopic film-slide card, a sales device showing fountains like those here involved in three-dimensional pictures as offered for sale.[2] There is no doubt in our minds that prospective buyers of these fountains would select them for the decoration of buildings or grounds according to specific, reproducible[3] designs, intending to us them as permanent decoration. The fountains are certainly made by man (manufactured) for sale to and use by such buyers. They certainly carry into effect the plain intent of the design patent statute, which is to give encouragement to the decorative arts. Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 524, 20 L.Ed. 731 (1871).

We fail to find in the opinion of the board majority any sufficient reason for holding the fountains are not "articles of manufacture." If, per chance, the board was attempting a distinction betweeen "manufactures," which it seemed to think the fountains are, and articles of manufacture, we think that supposed distinction was fully disposed of by our predecessor court, with respect to appeals from the Patent Office, the Court of Appeals for the District of

Columbia, in In re Hadden, 27 App.D.C. 259, 20 F.2d 275. The object there in question for which a design patent was sought was a grandstand. The Patent Office thought that, though it was a "manufacture," it was not "an article of manufacture" and refused the patent. The court in unanimously reversing, said:

It is difficult to perceive how a thing may be a manufacture, without producing an article of manufacture. The Commissioner, with commendable frankness, said: "It is difficult to attempt a definition of an article of manufacture. Curiously enough, if the grandstand as made by appellant were of a toy character, one that could be picked up and carried around, purchased in a store and carried home, or delivered by the use of a delivery vehicle, the device would be an article of manufacture." But, as pointed out by the court in the Riter-Conley Mfg. Co. Case, size and immobility do not determine the question.

Riter-Conley Mfg. Co. v. Aiken, 203 F. 699 (3d Cir. 1913), contains an extensive discussion of the meaning of "manufacture" and was quoted from at length by the dissenting board member. It cites numerous authorities, legal and otherwise. The gist of it is, as one can determine from dictionaries, that a manufacture is anything made "by the hands of man" from raw materials, whether literally by hand or by machinery or by art. Certainly the fountains are so made.

2. The advertising copy thereon reads: "Only Rain Jet's patented, rotating turbojet power-action nozzles can discharge individual droplets which give the 'shower of diamonds' effect. An entirely new concept of fountain patterns results! One—two or three tiers of droplets form a beautiful water sculptured design."

3. We use the term "reproducible" in the practical sense of making another thing which has the same appearance to the average viewer. The examiner was concerned about the obvious fact that "the exact arrangement and configuration of droplets" could not be reproduced by a person skilled in the art. We do not think this important. The same problem exists

to some degree with most everything made of such variable materials as wood, cloth, clay and many others which minutely vary from piece to piece. What matters with an ornamental design is only the ultimate over-all appearance of the article which embodies it. Technically, "exact" reproduction is an impossibility. It is always an approximation. We see no reason why design law—law being one of the greatest approximations of all—should be any more concerned with the "exact arrangement" of water droplets than it is with the exact arrangement of molecules, grains of sand, or even grosser building blocks so long as the general appearance is not affected.

The majority board opinion concludes with the view that "the present design is not drawn to subject matter coming within the terms or spirit of 35 U.S.C. § 171." We find in the opinion, however, no citation of authority other than the statute itself, no indication that the *terms* mean anything other than what they say, no reason why the fountain is not "an article of manufacture" other than the board majority's inability to conceive that it could be, and certainly no discussion of what the *spirit* of the statute is. We think its spirit is as stated by the Supreme Court in Gorham Mfg. Co. v. White, to encourage the decorative arts, over and beyond those classically known as "the fine arts." We think the appellant has contributed to the decorative arts. Surely, if he is told he cannot have protection by design patent, he and his like will be discouraged.

It is most interesting that the brief for the Patent Office contains only 4 pages of "argument," devotes two of them to stating the evolution of the statute from 1842 to 1902, when it took its present form, cites no authority to support the rejection but does cite the *Hadden* case for the proposition we cited it for above, and makes but a single argument in support of the contention the fountains *should* not be considered to be "an article of manufacture." It is, as the examiner contended, that water sprays "cannot exist of themselves," being dependent on the existence of the nozzles and the water under pressure. Only because of this *dependence* are we asked to affirm the rejection.

We fail to see any force in this argument. It is not denied that *designs* exist. It is perfectly clear that these designs are of the three-dimensional or configuration-of-goods type. The "goods" in this instance are fountains, so they are made of the only substance fountains can be made of—water.[4] We see no necessary relation between the de-pendence of these designs made of water upon the means for producing them and their being articles of manufacture. A majority of this court recently held patentable a grille for a radio cabinet with a circularly brushed *appearance* which also had evenly-spaced small perforations. The peculiarity of this grille was that "*with variations in viewing angle and ambient lighting*" (emphasis added) a varying moiré effect was produced and the majority felt that this effect made the ornamental appearance unobvious and patentable. The design was thus *dependent*, insofar as the feature which made it patentable was concerned, on something outside itself, it did not exist alone, because without the proper angles of ambient lighting and viewing there was no moiré effect. In re Boldt, 344 F.2d 990, 52 CCPA 1283 (1965). For an older moiré effect case in a serrated rubber doormat, see New York Belting & Packing Co. v. New Jersey Car Spring & Rubber Co., 137 U.S. 445, 11 S.Ct. 193, 34 L.Ed. 741 (1890). We do not see that the dependence of the existence of a design on something outside itself is a reason for holding it is not a design "for an article of manufacture." Many such designs depend upon outside factors for the production of the appearance which the beholder observes. The design of a lampshade may not be apparent unless the lamp is lighted. The design of a woman's hosiery is not apparent unless it is in place on her legs. The designs of inflated articles such as toy balloons, water toys, air mattresses, and now even buildings are not apparent in the absence of the compressed air which gives them form, as the water pressure here gives shape to the fountain. Even the design of wall paper is not always fully apparent in the commodity as it is sold and requires a wall and the services of a paperhanger to put it into condition for enjoyment by the beholder, which is the ultimate purpose of all ornamental design.

4. We are aware that fountains of sorts have been made of other fluids such as Martinis and Manhattans, on a small scale; but speaking practically, decorative fountains of the type we are discussing must be made of water.

Finding, as we do, that the examiner, the majority of the board, and the Solicitor for the Patent Office have produced no argument of substance or any authority in support of their view, that the dissenting member of the board has made cogent arguments in opposition to it, and believing that the primary objectives of the design patent statute will be carried out by protecting these designs for water fountains, if they otherwise meet the requirements of the statutes, we hold they meet the "article of manufacture" requirement of 35 U.S.C. § 171.

The decisions of the board are reversed.

Reversed.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.

WORLEY, Chief Judge (dissenting).

It is inconceivable that Congress could possibly have intended Sec. 171, in letter or spirit, to allow an individual to remove from the public domain and monopolize mere sprays of water.[1] To do so, one must necessarily rely on strained semantics at the expense of common sense. The instant sprays, so evanescent and fugitive in nature, presumably subject to the whims of wind and weather, incapable of existing in and of themselves, are merely the *effect* flowing from articles of manufacture, but certainly are no more articles of manufacture per se than are the vapor trails of jets, wakes of ships or steam from engines.

It appears that appellant presently enjoys patent protection on the mechanical elements of the fountains, but apparently not satisfied with that, now seeks to monopolize certain configurations of

moving water, whether produced by a garden hose or otherwise. It is not difficult to imagine the potential harassment that could result from such a monopoly.

I would affirm.

---

[1]. Appellant concedes that

Each application here under consideration is a design formed by continually moving droplets of water in a fountain. The design is formed by the droplets as they move, first upwardly, then arcing over and finally falling downwardly in a very special form, thereby to constitute an invariable configuration and visual appearance. *Although there is a spray head and a catch basin, these mechanical appurtenances do not form a part of the design.* (Emphasis supplied.)