PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALLAN BROUGHMAN,

   *Plaintiff-Appellant,*

   v.

LARRY S. CARVER, Industry
Operations Investigator, Bureau of
Alcohol, Tobacco, Firearms and
Explosives,

   *Defendant-Appellee.*

No. 09-2095

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, District Judge.
(7:08-cv-00548-sgw-mfu)

Argued: September 23, 2010

Decided: November 15, 2010

Before GREGORY and AGEE, Circuit Judges, and
Richard L. VOORHEES, United States District Judge
for the Western District of North Carolina,
sitting by designation.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Gregory and Judge Voorhees joined.

**COUNSEL**

**ARGUED**: Richard E. Gardiner, Fairfax, Virginia, for Appellant. Thomas Linn Eckert, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

Allan Broughman operated a gun shop pursuant to a dealer's license issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). After performing a routine inspection of Broughman's shop in 2006, ATF investigator Larry Carver issued a report of violations concluding, among other things, that in order to lawfully conduct his business Broughman needed to obtain a manufacturer's license from ATF. Although Broughman administratively challenged Carver's finding, it was upheld by Carver's supervisor.

Broughman subsequently filed suit in the United States District Court for the Western District of Virginia, seeking a declaratory ruling that he is a "dealer," not a "manufacturer," within the meaning of the Gun Control Act of 1968 ("GCA" or "the Act"). Concluding that Broughman met the GCA's definition of a firearms "manufacturer," the district court granted summary judgment in favor of ATF. For the reasons set forth below, we affirm the judgment of the district court.

I.

We begin with a brief summary of the facts and procedural history of this case. Broughman operates a gun shop out of the basement of his home in Covington, Virginia. Rather than

maintain an inventory of firearms, Broughman's business is typically comprised of both repairing firearms and marketing and selling custom order firearms that he constructs. As the district court noted, "[e]ven by his own words, Broughman 'build[s] custom bolt action rifles' by assembling the component parts of a firearm." *Broughman v. Carver*, No. 7:08-CV-0548, 2009 WL 2511949, at *2 (W.D. Va. Aug. 14, 2009).

The parties agree that in constructing such firearms "Broughman purchases complete firearms actions (frames or receivers with internal parts) from other licensees, and purchases rifled barrels from other sources. He threads and chambers the barrels to fit the actions, blues the actions, and makes wooden stocks which he fits to the actions and barrels." Joint Appendix ("J.A.") at 6.

During his inspection of Broughman's shop, Carver observed Broughman assemble a barrel, receiver, and stock for a customer. Carver's subsequent conversation with Broughman confirmed that he "assembled . . . firearms and sold them for several thousand dollars" a piece. *Id.* at 43. Subsequently, Carver issued a report of violations that charged Broughman with "manufacturing" firearms without a manufacturer's license. Broughman's counsel sent a letter to ATF requesting the violation be removed on the grounds that Broughman did "not manufacture firearms," *id.* at 45, but Carver's supervisor declined this request because it was "ATF's long standing position that the business activities" in which Broughman engaged were "considered to be manufacturing activities, necessitating a manufacturer's license." *Id.* at 47.

In order to continue operating his business, Broughman obtained a manufacturer's license from ATF.[1] He then filed

---

[1]As the district court explained,

> there are differences between the obligations that accompany a manufacturer's license and a dealer's license. For example, the

suit in federal district court seeking declaratory relief and judicial review under the Administrative Procedure Act. *See* 28 U.S.C. § 2201(a) & 5 U.S.C. § 702. Broughman's complaint requested the district court (1) declare that he is a "dealer," not a "manufacturer" under the GCA, (2) set aside ATF's determination that his business activities required a manufacturer's license, and (3) award such other relief, including costs and attorney's fees, as the court deemed appropriate.

The parties subsequently filed competing motions for summary judgment. After considering the parties' submissions, the district court rejected the proposition that Broughman could not "be both a manufacturer of firearms and a dealer of firearms" under the GCA, turned to the "ordinary meaning" of the word "manufacturing," and concluded that "assembling the component parts of a firearm" came within the ordinary meaning of that term. *Broughman*, 2009 WL 2511949, at *2. The district court accordingly held that Broughman's activities constitute firearms "manufacturing" and entered summary judgment in favor of ATF.

---

licensing fees are slightly more expensive in the long-term for manufacturers, *compare* 18 U.S.C. § 923(a)(1)(B) (manufacturers of firearms other than destructive devices must pay a licensing fee of fifty dollars per year) *and* 27 C.F.R. § 478.42(a)(2) (same) *with* 18 U.S.C. § 923(a)(3)(B) (dealers in firearms other than destructive devices must pay a two hundred dollar licensing fee for the first three years, with a ninety dollar renewal fee every three years thereafter) *and* 27 C.F.R. § 478.42(c)(2) (same); manufacturers have additional record keeping obligations, *compare* 27 C.F.R. § 478.123 (record keeping obligations specific to manufacturers) *with* 27 C.F.R. § 478.124 (firearms transaction record required for all licensed importers, manufacturers, and dealers) *and* 27 C.F.R. §§ 478.124a, .125(e) (firearms receipt and disposition records for dealers); and manufacturers must engrave each manufactured firearm with a serial number, *see* 18 U.S.C. § 923(i); 27 C.F.R. § 478.92, although ATF regulations permit manufacturers to apply for a variance, 27 C.F.R. § 748.92(a)(4).

*Broughman*, 2009 WL 2511949, at *1 n.3.

Broughman noted a timely appeal over which we have jurisdiction under 28 U.S.C. § 1291.

## II.

On appeal, Broughman contends that he meets the GCA's definition of a firearms "dealer" contained in 18 U.S.C. § 921(a)(11)(B), *i.e.*, that he is a person "engaged in the business of . . . making or fitting special barrels, stocks, or trigger mechanisms to firearms." This specific definition of a "dealer," in Broughman's view, renders the GCA's firearms "manufacturer" provision inapplicable because the GCA does not define a firearms "manufacturer." *See* 18 U.S.C. § 921(a)(10) (referring merely to those "engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution").

Because the GCA's terms regarding a firearms "dealer" are more precise, Broughman maintains the canon of statutory construction stating "the specific governs the general" should apply. Under this rule of construction, "[s]pecific terms prevail over the general in the same or another statute which otherwise might be controlling." Opening Brief at 6-7 (quoting *Fourco Glass Co. v. Transmirra Corp.*, 353 U.S. 222, 228-29 (1957)). Broughman suggests that, in light of this rule, "however inclusive may be the definition of 'manufacturer' [under § 921(a)(1), that definition cannot be held to apply to a person whose activities meet [§ 921(a)(11)(B)'s] definition of 'dealer.'" *Id.* at 7.

ATF responds that "Broughman's argument is premised on the false assumption th[at] he [cannot] be both a firearms 'manufacturer' under § 921(a)(10) and a firearms 'dealer' under § 921(a)(11)." Response Brief at 7. "[T]he GCA and the regulatory framework promulgated by ATF for implementation of the GCA," in ATF's view, "compel the conclusion that Congress recognized that a person could be both a firearms 'dealer' and a 'manufacturer.'" *Id.* As such, ATF would have

us apply the ordinary meaning of the term "manufacturing" and conclude, based on "Broughman's admissions to Carver, Carver's observations of what Broughman was doing in his gun shop[,] and Broughman's own description of his acts in his amended complaint," that Broughman is engaged in the business of "manufacturing" firearms and must obtain a manufacturer's license. *Id.* at 8.

### III.

Whether Broughman is a firearms "manufacturer" within the meaning of the GCA is "a question of statutory interpretation, a quintessential question of law, which we review de novo." *United States v. Joshua*, 607 F.3d 379, 382 (4th Cir. 2010) (quotation omitted). Our objective in all cases of statutory interpretation is "to ascertain and implement the intent of Congress." *Scott v. United States*, 328 F.3d 132, 138 (4th Cir. 2003). Because Congress' intent "can most easily be seen in the text of the Acts it promulgates," we begin with an examination of the statute's "plain text." *United States v. Wills*, 234 F.3d 174, 178 (4th Cir. 2000).

The GCA's licensing requirement states: "No person shall engage in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition, until he has filed an application with and received a license to do so from the Attorney General." 18 U.S.C. § 923(a); *see also* 27 C.F.R. § 478.41. In this case, the parties do not dispute that Broughman's bolt-action rifles meet the GCA's definition of a "firearm," or that Broughman satisfies the statute's "engaged in the business" requirement. *See* 18 U.S.C. §§ 921(a)(3) & 921(a)(21)(A). Their disagreement solely concerns the GCA's distinction between "manufacturing" and "dealing" firearms.

Under the GCA, a firearms "manufacturer" is defined as "any person engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution." *Id.*

§ 921(a)(10). The statute does not further define the term "manufacturing firearms." In contrast, the GCA defines a firearms "dealer" in three distinct ways.[2] *See id.* § 921(a)(11). The pertinent part of the statutory definition at issue here states that a "dealer" is "any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms." *Id.* § 921(a)(11)(B).

"Absent explicit legislative intent to the contrary," we give the words of a statute their "plain and ordinary meaning." *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1133 (4th Cir. 1996). The plain and ordinary meaning of the word "manufacture" is "to make into a product suitable for use." Merriam-Webster Online Dictionary (2010); *see also id.* (listing as related words "assemble, build, construct . . . refashion, [and] remake"). We therefore conclude that manufacturing firearms under § 923(a) entails assembling a firearm's individual components so as to render the firearm "suitable for use."[3] The

---

[2] 18 U.S.C. § 921(a)(11) provides as follows:

> The term "dealer" means (A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term "licensed dealer" means any dealer who is licensed under the provisions of this chapter.

While subsections A and C may also apply to some of Broughman's business activities, subsection B is the only provision relevant to the issue in this case.

[3] We reject Broughman's contention that "manufacture," in context of the GCA, should be defined as the "creat[ion] [of] items 'from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations.'" Reply Brief at 5 n.2 (quoting *Am. Fruit Growers, Inc. v. Brogdex Co.*, 283 U.S. 1, 11 (1931)). *American Fruit Growers* considered whether a certain process for rendering fruit resistant to decay constituted a "manufactured article" within the meaning of 35 U.S.C. § 31. 283 U.S. at 11. Given the patent-law context in which that case was decided, it is unsurprising the Supreme Court chose to utilize a definition

manner in which Broughman conducts his gun business; *i.e.*, "build[ing] custom bolt action rifles" by threading and chambering barrels to fit firearms actions, bluing the actions, and making and fitting stocks to the actions and barrels; undoubtedly places him within the statutory category of a firearms "manufacturer."

To circumvent the conclusion that he is "engaged in the business of manufacturing firearms" within the meaning of the GCA, Broughman points us to the well known canon of construction that "the specific governs the general." *Varity Corp v. Howe*, 516 U.S. 489, 511 (1996). "Canons of construction, however, are simply rules of thumb which will sometimes help courts determine the meaning of legislation." *Id.* (quotations omitted). We have characterized the canon in question as merely "a warning against applying a general provision when doing so would undermine limitations created by a more specific provision." *Id.* Section 921(a)(11)(B)'s definition of a firearms "dealer" does not, however, impose any clear limitations that would be undermined by adhering to the plain text of § 921(a)(10). Moreover, Congress knows how to carve out firearms "dealers" from firearms "manufacturers" when it wishes to prevent any overlap of the two categories. Congress did so in the National Firearms Act of 1934 when it enacted mutually exclusive definitions of a firearms "manufacturer" and a firearms "dealer." *See* 26 U.S.C. § 5845(k) (stating that a "dealer" within the meaning of the National

---

of "manufacture" that focused on the originality of the resulting product. *See Ambrosia Chocolate Co. v. Ambrosia Cake Bakery*, 165 F.2d 693, 697 (4th Cir. 1948) ("Only upon a clear showing of novelty and originality . . . is a patent granted . . . ."). Here, we are not concerned with whether Broughman's rifles were sufficiently original to warrant patent protection, but with whether they were "manufactured" within the meaning of the GCA. A more general definition of "manufacture," which is more suited to this context, therefore applies. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (recognizing that "we must be guided to a degree by common sense").

Firearms Act of 1934 is "any person, *not a manufacturer* or importer, engaged in the business of selling, renting, leasing, or loaning firearms") (emphasis added). Congress has not similarly worded the GCA.

Broughman argues "the district court's holding makes the definition of 'dealer' at issue here a complete nullity, with no effect whatever because any person who meets that definition would nonetheless be considered a manufacturer." Opening Brief at 8. We disagree. Circumstances certainly exist in which an individual would meet § 921(a)(11)(B)'s definition of a firearms "dealer" without qualifying as a firearms "manufacturer" under § 921(a)(10). Firearms "dealers" under § 921(a)(11)(A) and (C) are not firearms "manufacturers" and the same is true of many "dealers" under subsection (B). Certainly if Broughman only repaired firearms, fitted new stocks on rifles, or interchanged choke barrels, he would fit the definition of § 921(a)(11)(B) "dealer" but not that of a § 921(a)(10) "manufacturer."

Section 921(a)(11)(B) is thus not rendered superfluous by construing a "manufacturer" under § 921(a)(10), as both we and the district court have done, in accordance with its plain text. That the totality of Broughman's custom rifle building may fall under the "dealer" definition does not exclude him from being a "manufacturer" within the meaning of the Act because he meets that classification as well. Broughman's business consists of combining the essential parts of a firearm in order to make that firearm "ready for use," in the first instance, and that clearly qualifies him as a "manufacturer" under the GCA.[4]

---

[4]We recognize that the GCA defines a "firearm" not only as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," but also as "the frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3). But this fact does not support Broughman's argument that he cannot be a firearms "manufacturer" because he does not create "the frame or receiver" used to fashion the bolt-action rifles in question. That Broughman manufactures "firearms" within the meaning of one statutory definition rather than another does not render him any less a manufacturer of "firearms" within the meaning of the Act.

In upholding the vitality of both the GCA's "dealing" and "manufacturing" provisions, we remain true to "our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (quotation omitted). Adopting Broughman's position, in contrast, would go a long way towards reading the GCA's "manufacturing" provisions out of the Act. *See id.* at 539 (refusing to adopt an interpretation of a statute that would "emasculate an entire section" of the act). This result cannot be squared with Congress' intent in implementing the GCA.

We must "construe the details of [every statute] in conformity with its dominating general purpose . . . and . . . interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases [Congress'] generally expressed legislative policy." *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 350-51 (1943). In this case, the "regulatory goals" of the GCA are clear: "the Act ensure[s] that weapons [are] distributed through regular channels and in a traceable manner," thus making "possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms." *New York v. Burger*, 482 U.S. 691, 713 (1987) (quotation omitted). Severely limiting the application of the GCA's "manufacturing" provisions would be inconsistent with these goals and would serve to "undermine the congressional policies" underlying the Act.[5] *Custer v.*

---

[5]We note that requiring Broughman to engrave his identifying information on the bolt-action rifles he creates is consistent with the existing regulatory scheme, which requires a "firearm frame or receiver that is not a component part of a complete weapon at the time it is sold [to be] identified as required by" 27 C.F.R. § 478.92(a)(1)(ii). 27 C.F.R. § 478.92(a)(2); *see also id.* § 478.92(a)(1)(ii) (instituting an engraving requirement encompassing a firearm's model and caliber, as well as the manufacturer's name and the city and state of the manufacturer's business). As the district court correctly noted, firearms manufacturers may apply to ATF for a variance allowing them to use "other means of identification," provided "such other identification is reasonable and will not hinder the effective administration" of the regulatory scheme. 27 C.F.R. § 478.92(a)(4)(i).

*Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996); *see also RSM, Inc. v. Buckles*, 254 F.3d 61, 63 (4th Cir. 2001) (explaining that, pursuant to the GCA, ATF "operates a firearms tracing system" that allows it to "track[ ] the movement of [a] weapon through the chain of distribution to the federal firearms licensee . . . who ultimately sold the firearm to the retail purchaser").

We therefore conclude based on the GCA's plain language, "the specific context in which that language is used, and the broader context of the statute as a whole," *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997), that Broughman is a "manufacturer" of firearms within the meaning of the Act. Section 923(a) thus requires Broughman to maintain a manufacturer's license.[6] Accordingly, we affirm the district court's grant of summary judgment in favor of ATF.

*AFFIRMED*

---

[6]Under the existing regulatory scheme, Broughman's manufacturer's license entitles him to sell the bolt-action rifles he creates without separately obtaining a dealer's license. *See* 27 C.F.R. § 478.41(b) ("[I]t shall not be necessary for . . . a licensed manufacturer to also obtain a dealer's license in order to engage in business on the licensed premises as a dealer in the same type of firearms authorized by the license to be . . . manufactured.")