Affirmed by published opinion. Judge DIAZ wrote the opinion, in which Judge KING joined. Senior Judge DAVIS wrote an opinion concurring in part and dissenting in part.
DIAZ, Circuit Judge:
All attorneys licensed in Maryland who are not permanently retired must pay an annual fee to the Client Protection Fund of the Bar of Maryland. In addition to paying the fee, Maryland attorneys must also disclose their social security numbers to the Fund. Relying on federal law, the Court of Appeals of Maryland enacted this particular mandate in support- of the state’s efforts to collect back taxes and past-due child-support payments from attorneys.
*393 The Court of Appeals suspended Michael Tankersley’s law license after he refused to provide his social security number to the Fund. In response, Tankersley sued the trustees of the Fund and the judges and the clerk of the Court of Appeals (the “Defendants”), all in their official capacities, seeking injunctive relief based on his claim that his suspension violated the federal Privacy Act. ' '
The district court granted the Defendants’ motion to dismiss. Because we find that federal law gives Maryland the power (acting through its agents) to compel the disclosure of social security numbers in this circumstance, we affirm.
I.
A.
The Court of Appeals of Maryland has the statutory power to “establish a Client Protection Fund of the Bar of Maryland,” in order “to maintain the, integrity of the legal profession by paying money to reimburse losses caused by defalcations of lawyers.” Md. Code Ann., Bus. Occ. & Prof. § 10-311. As part of this principal mission, the Fund is also required by statute to “provide a list of lawyers who have paid an annual fee to the Fund during the previous fiscal year to ... the Comptroller, to assist the Comptroller in determining whether each lawyer on the list has paid all undisputed taxes.” Id. § 10-313(a). That list must include “the federal tax identification number of the person or, if the person does not have a federal tax identification number, the Social Security number of the person.” Id. § 10-313(b)(2)(ii).
In promulgating rules to enforce this statute, the Court of Appeals referenced the power given to the state by 42 U.S.C. § 405(c)(2)(C)(i). That provision was enacted as part of the Tax Reform Act of 1976, and it allows states to collect social security numbers for certain enumerated purposes, including the administration of tax laws.
The Court of Appeals also uses the Fund to comply with the Welfare Reform Act, 42 U.S.C. § 666, which Congress passed in 1996 to “increase the effectiveness of the [child support enforcement] program which the State administers.” Id. § 666(a). To that end, the Welfare Reform Act conditions federal funding on states’ having in effect “[procedures requiring that the social security number of ... any applicant for a professional license .... be recorded on the application.” Id. § 666(a)(13).
In 1997, the Maryland General Assembly passed a series of statutes to comply with the Welfare Reform Act, including Family Law section 10-119.3(b)(l), which compels each “licensing authority” to “(i) require each applicant for a license to disclose the Social Security number of the applicant; and (ii) record the applicant’s Social Security number on the application.” If Maryland’s Child Support Enforcement Administration notifies the licensing authority that a licensee is in arrears on a child support order, it can “request a licensing authority to suspend or deny an individual’s license.” Md. Code Ann., Fam. Law § 10-119.3(e)(l). The Court of Appeals of Maryland is such a licensing authority. Id. § 10-119.3(a)(3)(ii)(15).
In 2009, then-Chief Judge Robert M, Bell of the Court of Appeals notified all Maryland attorneys that they were required to provide their social security numbers to comply with sections 10-119.3 and 10-313. Most Maryland attorneys heeded the Chief Judge’s notice, but over nine thousand did not. When the General Assembly threatened to withhold $1 million from the judiciary’s budget if it did not move more- aggressively against the recalcitrant attorneys, the Court of Ap *394 peals amended its rules to provide for enforcement.
The resulting Rule 16-811.5 mandated that “each attorney admitted to practice before the Court of Appeals ... shall ... provide to the treasurer of the Fund the attorney’s Social Security number.” Md. Rules, Rule 16 — 811.5(a)(1) (2014) (current version at Md. Rules, Rule 19-605(a)(l) (2016)).[1] In addition, Rule 16-811.6 provided that the Court could suspend the license of any attorney who fails to comply with Rule 16-811.5. Md. Rules, Rule 16-811.6 (current version at Md. Rules, Rule 19-606).
B.
Tankersley has been licensed to practice law in Maryland since 1986 and in the District of Columbia since 1987. He has practiced primarily in the District of Columbia, while living in either the District or Virginia. Outside of the suspension underlying this case, he has never been disciplined.
Tankersley was notified in February 2013 that the Fund had never received his social security number, as requested in 2009, and that he had until March 22, 2013 to provide it. Tankersley responded that he generally does not share his social security number unnecessarily because of concerns about identity theft. Tankersley also noted that Maryland state agencies have suffered cyberatt'acks,' resulting in the exposure of individuals’ private information.
Citing these concerns, Tankersley refused to provide his social security number to the Fund, and questioned the legality of Rule 16-811.5. He was thereafter notified that his license had been suspended because Of his failure to comply with the Court’s rule.
C.
Tankersley sued James Almand, the Chair of the Fund, the other trustees of the Fund, and the judges and clerk of the Court of Appeals, alleging that the suspension of his license to practice violated section 7(a)(1) of the Privacy Act. He sought injunctive relief.
Tankersley moved for summary judgment, and the Defendants moved to dismiss for failure to state a claim or for summary judgment. The district court, relying on its decision in Greidinger v. Almand, 30 F.Supp.3d 413 (D. Md. 2014),[2] granted the Defendants’ motion to dismiss.
The court in Greidinger held that the word “applicant” in § 666 was not limited to “those who are applying or reapplying for a license,” as “it is clear that under [the Welfare Act] the federal government intended to implement a system which required complete disclosure of [sociál security numbers] by every individual who is subject to a licensing authority,” and § 666 therefore superseded section 7(a)(1). 30 F.Supp.3d at 422, 424. The court also found that § 405 of the Tax Reform Act superseded section 7(a)(1) of the Privacy Act, noting that although “the statutory language is less than clear, the legislative history provides ample evidence that the Senate Finance Committee believed the needs of State and local governments trumped individual privacy in [the tax administration] context.” Id. at 426.
Finding no basis for distinguishing the instant case from its holding in Greidinger, *395 the district court dismissed Tankersley’s complaint. This appeal followed.
II.
A.
Congress passed the Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896, in light of the government’s “increasing use of computers and sophisticated information technology,” which “greatly magnified the harm to individual privacy that can occur from any collection, maintenance, use, or dissemination of personal information.” Id. §. 2(a)(2). To protect against such harms, section 7(a)(1) of the Act makes it “unlawful for any federal, state or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual’s refusal to disclose his social security account number.” Important here, however, is section 7(a)(2), which makes section 7(a)(1) inapplicable to “any disclosure which is required by federal statute.” Id. § 7(a)(2)(A).
Both the Tax Reform Act, 42 U.S.C. § 405(c)(2)(C)(i), and the Welfare Reform Act, 42 U.S.C. § 666(a)(13)(A), allow states to collect individuals’ social security numbers in specific situations. This case turns on whether either provision applies to Maryland’s annual collection of social security numbers from attorneys it has already licensed to practice. If so, Tankersley may not rely on the Privacy Act to shield his social security number from the Fund.
B.
We review de novo a district court’s dismissal of an action under Fed. R. Civ. P. 12(b)(6). Kensington Volunteer Fire Dep’t, Inc. v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012). “[W]e may affirm on any grounds supported by the record, notwithstanding the reasoning of the district court.” Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 75 n.13 (4th Cir. 2016).
We also review questions of.statutory interpretation de novo. Broughman v. Carver, 624 F.3d 670, 674 (4th Cir. 2010)..When interpreting a statute, our “objective ... is ‘to ascertain and implement the intent of Congress,’ and Congress’s intent ‘can most easily be seen in the text of the Acts it promulgates.’ ” Aziz v. Alcolac, Inc., 658 F.3d 388, 392 (4th Cir. 2011) (quoting Broughman, 624 F.3d at 674-75). Where Congress has not defined a term, we are “bound to give the word its ordinary meaning, unless the context suggests otherwise.” Id. at 392-93.
C.
We first address whether, as the district court determined, the Welfare Reform Act requires Tankersley to provide his social security number to the Fund.
The Welfare Reform Act compels states to have “[procedures requiring that the social security number of ... any applicant for a professional license ... be recorded on the application.” 42 U.S.C. § 666(a)(13) (emphasis added). We agree with Tankers-ley that “applicant” cannot properly be read to include a Maryland attorney who must pay an annual fee to maintain his license.
We are guided here by a fundamental principle of statutory interpretation, which directs that we “presume that a legislature says in- a statute what it means and means in a ’statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.” Aziz, 658 F.3d at 392 (quoting Crespo v. Holder, 631 F.3d 130, 136 (4th Cir. 2011)). As Congress did not define “applicant,” we give the word its ordinary meaning. Id. at 392-93.
*396 An applicant is “someone who formally asks for something (such as a job or admission to a college)” or “someone who applies for something.” Applicant, Merriam-Wébster Dictionary, http://www. merriam-webster.com/dictionary/applicant; see also Applicant, Webster’s Dictionary (2d ed. 2001) (defining “applicant” as “a person who applies- for or requests something; a candidate”). We think it plain that the ordinary meaning of the word does not réach someone like Tankersley who has already satisfied the requirements for a license to practice law in’ Maryland but must pay an annual fee to maintain that license. As Tankersley points out,- one would not say that a college sophomore who must pay the next semester’s tuition before being allowed to continue his studies is an “applicant.” See Appellant’s Reply Br. at 5-6. So too here.
Moreover, the form the Fund uses to direct Maryland attorneys to provide their social security numbers underscores how poorly the word “applicant” fits in this context. It asks simply for the attorney’s name, address, and social security number. Seé J.A. 30. Such a bare-bones form can in no way be described as an “application,” arid, indeed, even the Fund does not refer to the form as such. See J.A. 29-30 (referring to the document as the “attached form” and the “completed form”).
Relying on Abramski v. United States, — U.S. —, 134 S.Ct. 2259, 189 L.Ed.2d 262 (2014), the Defendants say that our understanding of “applicant” renders the provision absurd because it excludes the majority of Maryland attorneys, “alone among covered professions,” from the Welfare Act’s coverage. Appellees’ Br. at 24. Not so. In Abramski, the Supreme Court chose between two readings of an ambiguous provision of the Gun Control Act of 1968. The Court rejected the reading that would have allowed a straw purchaser of a firearm to present himself as the actual buyer, because it “would undermine — indeed, for all important purposes, would virtually repeal — the gun law’s core provisions,” including “an elaborate system to verify a would-be gun purchaser’s identity and check on his background.” 134. S.Ct. at 2267.
We do not face a similar consequence here. It is certainly true that our reading of § 666 is under-inclusive in that the Fund cannot compel disclosure of social security numbers from a subset of Maryland attorneys who were licensed before a certain date. But that is a far cry from saying 'that it wox-ks a “virtual repeal” of the statute’s core provisions, given that the Fund’s enforcement power nonetheless extends to a substantial portion of the Maryland Bar, and expands each year as new attorneys are admitted to practice. That the statute exempts some lawyers from the Fund’s enforcement reach merely reflects the reality that “[n]o legislation pursues its purposes at all costs,” Mohamad v. Palestinian Auth., — U.S. —, 132 S.Ct. 1702, 1710, 182 L.Ed.2d 720 (2012) (quoting Rodriguez v. United States, 480 U.S. 522, 525-26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987)), and the final result “often involves tradeoffs, compromises, and imperfect solutions.” Preseault v. ICC, 494 U.S. 1, 19, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990).
We hold that the district court erred in relying on § 666 of the Welfare Reform Act to‘dismiss Tankersley’s complaint. Accordingly, we turn to consider whether the Tax Reform Act provides the statutory hook necessary to support the district court’s judgment.
D.
Section 405(c)(2)(C)(i) of the Tax Reform Act allows “any State (or political subdivision thereof)” to use social security numbers “in the administration of any tax ... *397 law within its jurisdiction, ... and may require any individual who is or appears to be [affected by the tax law] to furnish to such State (or political subdivision thereof) or any agency thereof haying administrative responsibility for the law involved, [his] social security account number.” See also Schwier v. Cox, 340 F.3d 1284, 1290 (11th Cir. 2003) (“The final version [of § 405(c)(2)(C)(i)] authorizes States to use [social security'numbers] only ‘in the administration of any, tax, general public assistance, driver’s license, or, motor vehicle registration.’ ”).
Recall that Tankersley’s claim is premised on the view that the Fund violated his right under the Privacy Act not to disclose his social security number. But as we noted earlier, the Privacy Act does not help Tankersley if the disclosure is required by federal law — in this case,- say the Defendants, § 405(c)(2)(C)(i).
Tankersley resists this conclusion on three grounds. First, he says that Maryland’s statutory requirement' that the Fund furnish the Department of Assessments and Taxation and the Comptroller with a list of attorneys who paid the annual fee to the Fund does not amount to the use of social security numbers “in the administration of any tax.” Second, he posits that the Fund is not an entity that has administrative responsibility for taxes, as contemplated by § 405. Third, he argues that he is not an “individual who is or appears to be” affected by Maryland’s tax laws because he neither works nor lives in Maryland, and he has never owed taxes there.
We address these contentions in turn.
1.
As was the ease with the Welfare Reform Act, Congress did not define “administration” in § 405, thus we give it its ordinary meaning. Aziz, 658 F.3d at 392-93. The ordinary, meaning of “administration” is the process of “managing] the operation of’ something, or .putting something “into effect.” Administering, Merriam-Webster Dictionary, www.merriam webster.com/dictionary/administering; see also Administration, Merriam-Webster Dictionary, www.merriam-webster.com/ dictionary/administration (defining “administration” as “the act or process of administering”).
The breadth of the plain meaning of “administration” is consistent with Congress’s treatment of the term as part of the broader legislation that enacted § 405. See Tax Reform Act of 1976, Pub. L. No. 94-455 §§ 1202, 1211, 90 Stat. 1520 (codified as amended at 26 U.S.C. § 6103; 42 U.S.C. § 405). There, in a provision of the Act expanding the Internal ' Revenue Code’s regulation of the disclosure of tax returns and tax return information, Congress defined “tax administration” as “the administration, management, conduct, direction, and supervision .of the execution and application of’ tax laws, including “assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws.” 26 U.S.C. § 6103(b)(4); see also id. § 6103(h)(1) (“Returns and return information, shall ... be open to inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration- purposes.”).
The Tax Reform Act of 1976 is comprehensive in scope. In addition to making changes to the Internal Revenue Code, Congress also amended, for example, the Social Security . Act, the Tariff Act of 1930, and the Commodity Exchange Act. While the Act’s definition of “tax administration” as applied to the Internal Revenue Code does not speak directly to the definition of *398 “administration” -in 42 U.S.C. § 405 (which was passed as part of the -changes Congress made to the Social Security Act), it does inform our analysis. It not only shows that the same Congress that enacted § 405 understood “administration” to be an expansive term, but it does so in the context of a provision balancing individual privacy — there, of tax return information— against the government’s need to use private information to administer taxes, just as § 405 does.
Given this, we are satisfied that the ordinary meaning of the term “administration” in § 405 is sufficiently expansive so as to allow the state of Maryland to compel lawyers licensed in Maryland to disclose their social security numbers. The practice “assist[s] the Department [of Assessments and Taxation] in identifying new businesses within the State” and “assist[s] the Comptroller in determining whether each lawyer on the list has paid all undisputed taxes,” Md. Code Ann., Bus. Occ. & Prof. § 10-313(a), which are functions of collection, enforcement, and statistical gathering required to enforce Maryland’s tax laws.
2.
We are also not persuaded by Tankers-lejfs contention that the Fund “is not an entity to which [social security number] disclosures may be required under § 405,” Appellant’s Br. at 26, in that it is not the “State (or political subdivision thereof) or [an] agency thereof having administrative responsibility for the law involved,” 42 U.S.C. § 405(c)(2)(C)(i).
Tankersley would have us ignore that the “[s]tate [of Maryland] ‘can act only through its officers and agents,’ ” and thus the act of collecting social security numbers is necessarily carried out by an officer or agent of the state. Nevada v. Hicks, 533 U.S. 353, 365, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (quoting Tennessee v. Davis, 100 U.S. 257, 263, 25 L.Ed. 648 (1879)). Moreover, to allow only the state agency directly responsible for administering the tax laws to collect social security numbers would read the phrase “or political subdivision thereof’ out of the statute, because it would not allow the state of Maryland, acting through other agents or political subdivisions, to collect the numbers. See, e.g., TRW Inc, v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (“It is ‘a cardinal principle of statutory construction’ that ‘a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be- superfluous, void, or insignificant.’ ” (quoting Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001))).
We also think it clear that the Court of Appeals of Maryland (as a subdivision of the state) and the Fund are — at least for these purposes — agents of the state. “A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way.” Ex parte Commonwealth of Virginia, 100 U.S. 339, 347, 25 L.Ed. 676 (1879) (emphasis added). Maryland’s constitution vests judicial authority in the Court of Appeals, Md. Const., Art. TV, § 1, and the. Court of Appeals has understood that power to include “the regulation of the practice of law, the admittance of new members to the bar, and the discipline of attorneys who fail to conform to the established standards governing their professional conduct,” Attorney Gen. v. Waldron, 289 Md. 683, 426 A.2d 929, 934 (1981). The Court of Appeals of Maryland is thus an agent of the state.
So too is the Fund, as an agent of the Court of Appeals. The Court, through the rulemaking authority given to it by statute, see Md. Code Ann., Bus: Occ. & Prof. § 10-311(a) (“The Court of Appeals may adopt rules that ... provide for the opera *399 tion of the Fund.”), has delegated to the Fund the power “[t]o perform all ... acts authorized by these Rules,” Md. Rules, Rule 19-604(a)(15). Of course, the Rules authorize the Fund’s collection of social security numbers. In this capacity, the Fund acts as an agent of the Court of Appeals, which is in turn an agent of the state. The Fund is therefore an entity under § 405 for purposes of requiring the disclosure of social security numbers.
3.
Tankersley’s final salvo with respect to the reach of § 405 is' that he is not a person who “is or appears to be” affected by Maryland’s tax laws, because in the twenty-eight years that- he has been licensed to practice law in Maryland, he has never lived in or owned property in Maryland, nor has he been required to pay taxes or make unemployment insurance contributions to the state.
We take Tankersley at his word when he says that he is someone who has not been affected by Maryland’s tax laws. But the statute reaches further to include individuals who “appear[] to be” affected by tax laws. Mindful of “our duty ‘to give effect, if possible, to every clause and word of a statute,’ ” United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting Inhabitants of Montclair Twp. v. Ramsdell, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)), a fair reading of § 405(c)(2)(C)® extends to all attorneys licensed to practice law in Maryland. Why? Because even though lawyers who live and practice elsewhere are less likely to owe taxes to Maryland than those who live and work in the state, Tankers-ley’s ability to earn income in the state (by virtue of his license) is enough to make him someone who “appears to be” affected by Maryland tax laws for the purpose of § 405. See Md. Code Ann., Tax-Gen. § 10-401 (providing for nonresident allocation of income, losses, and adjustments for tax purposes).
Accordingly, § 405 of the Tax Reform Act applies to Tankersley, and the state of Maryland may lawfully compel him to provide his social security number' to the Fund on pain of suspension of his law license. The district court’s judgment dismissing Tankersley’s complaint is therefore
AFFIRMED.

. The Court of Appeals has since reorganized the relevant rules. Though some parts of Rule 16-811.5 have changed, subsection (a)(1) is identical except for updated cross-references.

. Like Tankersley, Greidinger is a licensed Maryland attorney who declined to provide his social security number to the Fund.